[No. 14851.  Department One.  November 27, 1918.]

JOHN F. LYON, *Appellant,* v. S. A. NOURSE,
*Respondent.*[1]

CHATTEL MORTGAGES (1)—DISTINGUISHED FROM CONDITIONAL SALE
—VALIDITY.  Where an automobile was consigned to the purchaser
subject to payment of draft attached to the bill of lading, one who
advanced money to pay the draft, immediately delivering the bill
of lading to the consignee who took possession of the car, cannot
secure the advance by the giving and recording of a conditional
bill of sale to the consignee, under the fiction of a sale to and
resale by him; since it is not the office of a conditional bill of sale
to secure money loaned without the formalities required of a chattel
mortgage.

Appeal from a judgment of the superior court for
Pierce county, Chapman, J., entered January 4, 1918,
upon findings in favor of the defendant, upon with-
drawing the case from the consideration of the jury,
in an action in replevin.  Reversed.

*Wm. H. Pratt* and *Chas. Bedford,* for appellant.

*A. H. Denman* and *Rickabaugh & McElroy,* for re-
spondent.

TOLMAN, J.—This is an action in replevin to recover
an automobile, and damages for its detention, tried
to a jury, but after the evidence was in, both parties
moved the court to take the case from the jury and
to render judgment as a matter of law.  Thereupon the
trial court granted the defendant's motion for judg-
ment, made findings of fact and conclusions of law,
and entered a judgment in favor of the defendant be-
low (respondent here), awarding him the property in
question, together with damages, and this appeal fol-
lowed.

The facts, about which there is little dispute, so far

[1]Reported in 176 Pac. 359.

as necessary to be here set forth, are substantially as follows: In August, 1917, and for a year or two preceding that date, one Schabel was engaged in the retail automobile business in the city of Tacoma, selling principally the Paige car. Because of lack of capital, he was unable to pay cash for automobiles which he might order to place in stock, and arranged with respondent to finance him. That is, when he needed new cars to place on sale, Schabel ordered what he considered necessary from the distributor, the automobiles thus ordered were invoiced to him and shipped, and the bill of lading was sent attached to a draft for the sale price to a Tacoma bank, so that the cars must be paid for before Schabel could gain possession of them from the transportation company.

Upon the arrival of the shipment, including the car in question, Schabel procured the respondent, who was engaged in the financing business, to go to the bank, pay the draft, and deliver the bill of lading to Schabel, who thereupon surrendered the bill of lading to the transportation company, paid the freight, took the automobile to his place of business, and, at the same time or on the following day, he paid the respondent two per cent of the amount advanced to take up the draft, as his fee for financing, and respondent gave Schabel a conditional bill of sale in the usual form, which in this instance described the car in controversy as "One Stratford 6=51 automobile as equipped, Style 1917, Motor No. 73169, Car No. 92257," by the terms of which Schabel agreed to pay to respondent $1,196 on October 10, 1917, with interest at the rate of eight per cent per annum, which conditional bill of sale was filed for record with the county auditor within ten days. The automobile, which seems to have been marked "Paige" on the radiator and hub caps,

and to have had no other mark or name upon it, except the car number 92257 and motor number 73169, was displayed for sale in Schabel's place of business; and on August 25, 1917, the appellant purchased the car from Schabel, paying him $800 in cash, and turning in a used car at an agreed consideration of $950, making the purchase price $1,750. It seems to be admitted that the appellant had no notice of the respondent's rights or claims, except what constructive notice was given by the conditional sale agreement. Thereafter the respondent, learning of the sale of the car by Schabel to the appellant, made demand, and later, finding the car standing on the street, took it into his possession, and this action was instituted for its recovery.

From the admitted facts in the case, it seems clear to us that the respondent never had possession of the car prior to its delivery to Schabel, and had no title thereto. The car was sold and invoiced by the distributor to Schabel at what is apparently a dealer's price. Schabel was the recognized dealer in that make of cars in his city, and it was by all parties at all times intended that the car should pass into Schabel's possession as such dealer upon his paying the purchase price, and no doubt no one other than such an authorized dealer would have been permitted to purchase the car at the price at which it was invoiced. Being unable to pay, Schabel did what we all do under like circumstances, borrowed the necessary money from one who loaned for such purposes, and paid him a commission of two per cent for making the loan, and agreed to pay him interest until the loan was repaid.

It may be admitted that, for some purposes, the possession of the bill of lading is evidence of ownership of the goods therein described. But in this case the re-

spondent took up the draft and procured the bill of lading, not for the purpose of claiming the goods himself, but for the sole and only purpose of immediately delivering the bill of lading to Schabel so as to enable him to obtain possession of the goods which he had ordered for use in his own business, and which all parties had intended from the beginning should go to him and no one else, and except as a legal fiction, neither party to the transaction had any intention that any title or interest in the goods should vest in the respondent, except only that the goods should stand as security for the repayment of the money advanced.

It is not the office of a conditional bill of sale to secure money loaned. Its purpose is only to permit the owner of personal property to make a *bona fide* sale on credit, reserving the title in himself until the purchase price is fully paid in the manner and under the conditions laid down in the statute.

In *Cohen v. Schneider,* 70 Conn. 505, 40 Atl. 455, it appears that a person who owned the personal property in issue was in possession of the same and gave a bill of sale thereof to the plaintiff in that action, immediately taking back from the plaintiff a conditional sale agreement to himself. The court said:

"To construe the Act of 1895 as rendering a contract of conditional sale made under these circumstances, valid as against creditors of the vendee who had attached before any delivery of the goods to the plaintiff, would be to cause greater evils to creditors and purchasers than those against which the act was designed to furnish protection.

"Had the evidence in this case clearly shown that there was no delivery of the goods in question to the plaintiff before the attachment in the suit of Schneider, that would have been a sufficient ground for granting a nonsuit."

In *Payne v. Parker,* 95 Miss. 375, 48 South. 835, which involved somewhat similar facts, the supreme court of Mississippi said:

"We have no disposition to depart from the rule, now thoroughly established in this state, that personal property may be sold with verbal retention of title, and that the claim of the vendor to the purchase money will prevail over the claim of subsequent grantees. But we cannot hold as a matter of law that Payne ever actually owned the mules here in controversy. The whole transaction must be examined. The mules were not purchased from Payne in the first instance. They were bought from one Lawson. The sole purpose of the alleged sale to Payne was that title might momentarily vest in him for the purpose of an instantaneous resale, in order that the relation of the vendor and conditional purchaser might exist. The whole transaction might well be considered as nothing more than a verbal mortgage—an effort to substitute for a trust deed a pretended sale and resale, whereby innocent purchasers and incumbrancers would be defrauded. If this transaction is to be upheld, chattel mortgages will disappear. All borrowers upon personal property as security will simply agree with the lender to make a sale, accompanied by constructive delivery of the property, and buy the property back in the same transaction. We have here an illustration of a most flagrant wrong committed to the manifest injury of an innocent supply merchant. It is true that, under the previous decisions of this court, one taking a trust deed upon personal property must see to it that the   person from whom the property was purchased has not reserved the title, or that he has been paid; but he cannot be defeated by constructive sales and resales, had between persons who in reality sustain no other relation than that of creditor and debtor. We will not push the doctrine one inch further than it has already gone. In order for the seller to enforce his claim, he must be in fact the owner of the property, and make a *bona fide* sale thereof to a *bona fide* purchaser, by which sale the actual possession of the property shall be in truth changed."

That Connecticut had a recording statute with reference to conditional sales agreements, and Mississippi apparently had not, does not in any way alter the principle involved or reflect on the doctrine announced.

We are convinced that it is not the purpose of our law to permit one, by going through the form of a transfer of his property to a creditor, or to one who is about to become such, and immediately taking back from such creditor a conditional sale agreement, to thus secure the payment of his debt without the formalities required by the statutes covering the execution of chattel mortgages. That this is so is shown by our statute, Rem. Code, §5291, which provides that:

"*Bill of Sale Void, When.*—No bill of sale for the transfer of personal property shall be valid, as against existing creditors or innocent purchasers, where the property is left in the possession of the vendor, unless the said bill of sale be recorded in the auditor's office of the county in which the property is situated, within ten days after such sale shall be made."

If a formal bill of sale is thus rendered void where there is no change of possession and the instrument is not recorded, certainly a pretended transfer of title without any written evidence, which therefore cannot be recorded, and which leaves the possession of the property involved just where it was before, should also be held to be void. Therefore, the argument that Schabel, by permitting the respondent to take up the draft, sold the automobile to respondent, and thereafter repurchased it at an advance of two per cent, presents a fiction only and not a fact.

As our conclusion upon the point discussed disposes of the case, the other points urged by appellant, in which we are inclined to think there is some merit, are not considered.

The judgment will be reversed, with instruction to the trial court to grant appellant's motion for judgment.

MAIN, C. J., MACKINTOSH, MITCHELL, and CHADWICK, JJ., concur.