[No. 20981.	Department One.	August 13, 1928.]

## H. E. KELLY, *Respondent*, v. JOHN G. PRICE *et al.*, *Appellants*.[1]

[1] CHATTEL MORTGAGES (18)—SALES (168)—CONDITIONAL SALES AS MORTGAGE—FINANCE OF AUTO AS LOAN.	Where a conditional sales contract of an automobile was made by a finance company for the balance of the purchase price, advanced by it to the purchaser, the transaction amounts to a chattel mortgage as against an innocent purchaser for value, where it was the intention that the car should stand as security for the money advanced; since it is not the office of a conditional sales contract to secure money loaned.

[2] TROVER AND CONVERSION (9)—TITLE OF PLAINTIFF—TITLE TO AUTO, AFTER JUDGMENT IN REPELVIN FOR VALUE.	In trover for the recovery of a car, brought by the assignee of a finance company, whose contract was, in fact a chattel mortgage, and after the car had been sold by the vendee or mortgagee, while in his possession with apparent title, the plaintiff must recover, if at all, on the strength of his own title and can not depend on the weakness of that of his adversary.

[3] JUDGMENT (195)—BAR—PARTIES CONCLUDED.	A judgment in replevin for a car, for its value, the car having been released on redelivery bond, and the alternative judgment paid, is not res judicata as to a purchaser from the defendant after its release, the purchaser having notice of the redelivery bond which stood in lieu of the car, where such purchaser was not made a party to the suit.

Appeal from a judgment of the superior court for King county, Davidson, J., entered September 19, 1928, upon findings in favor of the plaintiff, in an action for conversion, tried to the court.	Reversed.

*Rummens & Griffin,* for appellants.
*Caldwell & Lycette,* for respondent.

TOLMAN, J.—This is an action in conversion to recover the value of a certain automobile.	The plaintiff had judgment, and the defendants have appealed.

[1]Reported in 269 Pac. 842.

The train of circumstances here involved was initiated by one R. C. Morrison, an automobile dealer of Aberdeen, who, in order to act as local agent or distributer of a certain make of automobiles, was required to purchase and pay cash for a car to be used as a demonstrator. What followed is set forth in the findings of the trial court, the first five of which read:

"I.   That on and prior to the 22nd day of November 1924, one R. C. Morrison a resident of Aberdeen, Washington, desired to purchase from Frank L. Parker who was then and is now the duly authorized agent of Jordan automobiles, a certain 1925 Jordan eight cylinder brougham, to be used by said Morrison as a demonstrator at Aberdeen, Washington; that on and prior to November 22, 1924, said Morrison approached the Hoquiam Finance Company, a corporation, and desired to have said Hoquiam Finance Company finance said purchase of said automobile; that said Hoquiam Finance Company, acting through F. C. Ladley and I. H. Goodwin agreed to finance the purchase of said car, by having the title thereof lodged in them and re-selling the car to said Morrison on conditional sales contract; that thereupon, to-wit: on the 22nd day of November 1924, said Morrison went to the Hoquiam Finance Company's office and at said office and in the presence and at the request of the Hoquiam Finance Company, called said Frank L. Parker, the Jordan dealer at Seattle, and requested a description of the car which was to be purchased, and said Parker thereupon furnished said Morrison with the description of said car by motor and serial number; that at said time said Morrision told said Parker that he would come to Seattle to get the car and that the title to said car was to be conveyed to the Hoquiam Finance Company, and that a bill of sale was to be made by said Parker directly to said Hoquiam Finance Company; that thereupon a conditional sales contract was drawn up between the Hoquiam Finance Company and said Morrison, a true copy of which was introduced in evidence as plaintiff's exhibit A.

"II.   That thereupon said R. C. Morrison came to Seattle and to the place of business of said Frank L. Parker, to secure the Jordan automobile agreed upon; that the agreed wholesale price of said car to said Morrison was $2,506.25; that said R. C. Morrison thereupon paid $206.25 of said sum by his personal check, and that the balance of said purchase price, in the sum of $2,300.00 was paid by said Hoquiam Finance Company in the following manner said Hoquiam Finance Company deposited the money in its bank at Hoquiam and directed said bank to have said money transmitted to Seattle to a correspondent bank; that said money was so transmitted to the National Bank of Commerce in Seattle, for the purpose of delivering the same directly to said Parker without the intervention of said Morrison; that said $2,300.00 was turned over by cashier's check directly to Frank L. Parker; that thereupon said Parker delivered said car to said Morrison; that no written bill of sale was executed by said Parker.

· "III.  That thereupon said Morrison returned to Hoquiam with said automobile, and said Hoquiam Finance Company requested him to deliver the bill of sale which was to have been obtained from said Parker; that as soon as the Hoquiam Finance Company found that said Morrison did not have a written bill of sale for them to said car, said Hoquiam Finance Company required said Morrison to execute a bill of sale to said Hoquiam Finance Company, and thereupon said Morrison executed a bill of sale to the Hoquiam Finance Company; that said bill of sale was taken solely for the purpose of avoiding any question but that the title to said car was in the Hoquiam Finance Company, and said bill of sale was taken merely as a precautionary measure, and not because said Hoquiam Finance Company believed said title was in said R. C. Morrison; that a true copy of said bill of sale was introduced in evidence as plaintiff's exhibit B.

"IV.   That said conditional sales contract between said Hoquiam Finance Company and said Morrison was duly filed with the County Auditor of Grays Harbor County, within ten days from the date of execution

thereof, and that said bill of sale between said Morrison and said Hoquiam Finance Company was duly filed with the County Auditor of Grays Harbor County, within ten days from the date of the execution thereof.

"V.   That the transaction between said Hoquiam Finance Company and said R. C. Morrison was at all times intended and treated by the parties thereto as a conditional sale between said Hoquiam Finance Company and said R. C. Morrison; that said Hoquiam Finance Company would not have handled said transaction as a chattel mortgage."

For present purposes and to avoid confusion, further delineation of the somewhat involved situation is postponed until we reach questions to be later considered in the case.  So far as applies to the first and main question involved, it is only necessary to add that Morrison, after making six of the monthly payments provided in the agreement with the Hoquiam Finance Company as they matured, drove the car to Seattle and there, by his possession of the car and by exhibiting a receipted invoice in his name, given him by the Parker Agency at the time the car was delivered to him, succeeded in selling the car for cash, which he pocketed and then disappeared.  It does not, however, appear that the Hoquiam Finance Company knew that Morrison was in possession of such a receipted invoice.

[1]  Appellants rely upon the case of *Lyon v. Nourse*, 104 Wash. 309, 176 Pac. 359, and the cases which follow and support its doctrine; while respondent just as confidently relies upon the case of *Lloyd v. MacCallum-Donahoe Co.*, 127 Wash. 180, 219 Pac. 849. The *Lyon* case and those which follow it were all contests in which the rights of subsequent purchasers or creditors were involved.  The *Lloyd* case was, in effect, a contest between the original parties, no subsequent

18—148 WASH.

claimant of the property dealt with being there involved. If there were no subsequent innocent purchaser here, the *Lloyd* case would be in point and would be ample authority for the affirmance of the judgment.

Upon the other hand, in the *Lyon* case the property was intended to go at once into the sales room of the dealer to be shown to and, if possible, sold to innocent purchasers who would never think of examining the public record to ascertain if the dealer had title. While here, the car was to be used as a demonstrator, and it is not clear whether it was in fact on sale or only to be used to secure orders for like cars to be later delivered. Still, Morrison being a dealer, in the absence of anything to the contrary, the presumption must be that he would sell this or any other demonstrator at the first opportunity he might have to do so at a profit, or advantageously.

While it may be that the intention of the parties governs, yet in a case like this involving the rights of innocent purchasers, the intentions of the parties must be learned from what they did and not from what they may later detail on the witness stand.

After a careful reading of the testimony, we are convinced that it was not intended that the Hoquiam Finance Company should do anything but finance Morrison in the purchase of this car, and that the car should stand as security for the money advanced. It is not necessary to repeat here the arguments of the *Lyon* case, but for all of the reasons there advanced, security by chattel mortgage should have been taken. See, also, *Olsen v. Legal Adjustment Bureau*, 142 Wash. 446, 253 Pac. 643, and *Mahon v. Nelson, ante,* p. 110, 268 Pac. 144.

We conclude that the trial court erred in his findings that a sale was intended and in holding that the trans-

action was a sale from the Finance Company to Morrison.

[2]   When Morrison took the car to Seattle, he attempted to sell it to a Mr. Clement, and he, not having the money with which to purchase, took Morrison to one Whitman who either purchased the car and resold it to Clement on conditional sale contract, or financed Clement in making the purchase.   Later when the car was in Clement's possession, the Hoquiam Finance Company located it and began a replevin action for its recovery against Clement only.   Clement gave a re-delivery bond and retained possession.   Afterwards, and apparently before judgment, he surrendered or transferred the car to Whitman and thereafter Whitman resold it to the appellants. Judgment went against Clement in the replevin action and the car not being returned, the alternative judgment for the value of the car was paid by the surety on the redelivery bond. The Hoquiam Finance Company thereafter assigned the judgment to the surety and the surety assigned it to respondent for the purpose of collection.

From these facts it is argued, first, that appellants' title being derived through Clement or Whitman, they are in the same position and their title is subject to the same objections as those we have already considered as against the title of the Hoquiam Finance Company.  We think, however, that respondent must recover, if at all, upon the strength of his own title; and it not being denied that Morrison sold the car to someone who gave value for it on the strength of Morrison's possession and apparent title, we will not now inquire as to whether the title conveyed by Morrison passed to Whitman or Clement.

[3]   It is next urged that appellants are bound by the judgment rendered against Clement in the replevin action and that that judgment is *res judicata* here.

We do not think so. At the time the replevin action was commenced, Clement was in possession, under a conditional bill of sale from Whitman which was of record in the county where the action was instituted. Plaintiff in that action claimed a title superior to the title of either Clement or Whitman, but Whitman was not made a party to that action. Clement later returned, or consented to the return of, the car to Whitman under the terms of a contract between them which was presumably good as between the parties. If Whitman knew of the pendency of the replevin action against Clement when he repossessed the car, he also knew of the giving of the redelivery bond which stood in lieu of the car, and having title as against Clement, we see no reason why he should not retake the car without becoming a purchaser *pendente lite.*

We conclude that the judgment appealed from must be reversed, and the cause remanded with directions to dismiss the action.

Reversed and remanded.

PARKER, MITCHELL, and FRENCH, JJ., concur.