[No. 28409. Department One. December 29, 1941.]

HUGHBANKS INCORPORATED, *Respondent*, v.
R. C. GOURLEY *et al.*, *Appellants*.[1]

[1]Reported in 120 P. (2d) 523.

*Richard M. Thatcher* and *Raymond D. Torbenson,* for appellants.

*Little, Burgunder & Smith* and *Lew E. Flanders,* for respondent.

STEINERT, J.—Plaintiff, Hughbanks Incorporated, claiming to be the owner and entitled to the immediate possession of certain automotive machinery, instituted a claim and delivery proceeding under Rem. Rev. Stat., § 573 [P. C. § 7843], to procure the surrender thereof from defendant W. B. Severyns, sheriff of King county, who had theretofore taken the machinery from one Elmer W. Findley pursuant to a writ of attachment previously issued in a civil action for debt brought by defendant R. C. Gourley against Findley. Defendant Gourley appeared in opposition to plaintiff's claim. Upon a summary trial by the court without a jury, findings and conclusions were rendered, pursuant to which the court entered a judgment declaring plaintiff to be the legal owner and entitled to the possession of the machinery, free and clear of any right, title, interest, lien, or claim of defendants, or either of them. Both defendants have appealed, although the contest is actually between plaintiff, Hughbanks Incorporated, hereinafter designated respondent, and defendant R. C. Gourley, to whom we shall henceforward refer as though he were the sole appellant.

The present controversy between these parties is the outgrowth of a transaction originally had between respondent and Elmer W. Findley concerning a Cletrac tractor and an hydraulic "bulldozer" attachment, which together comprise the property here involved. The

legal effect of that transaction constitutes the basic dispute between the contesting parties. Respondent's position herein is that the transaction was in fact, as well as in form, a conditional sale of the property by it to Findley. Appellant's contention, on the other hand, is that the transaction, though in form a conditional sale, was in legal effect a chattel mortgage to secure a loan from respondent to Findley of funds with which to purchase the tractor and attachment from a third party.

At all times pertinent to this case, respondent has been engaged in a general finance and investment business. Prior to April 26, 1940, Findley, who was engaged in a business involving the moving of earth, had purchased from respondent, under a conditional sale contract, a tractor equipped with a "bulldozer" attachment. Findley desired, however, to get a newer and better tractor thus equipped, although he had not yet completed his payments on the old one. After some inquiry and investigation, he located a suitable tractor and attachment then owned by one Claude Williams, who had purchased the machine from Pacific Hoist & Derrick Co. Findley inspected the entire equipment and discussed the price with Williams, but he did not have the money with which to purchase it. He therefore sought the assistance of respondent and succeeded in effecting an arrangement with the latter's vice-president whereby respondent agreed to purchase the Williams' machine and immediately sell it to Findley on conditional sale contract. Findley was to turn in his old tractor and attachment and receive credit in the sum of five hundred dollars on the contract. In furtherance of this arrangement, respondent agreed to pay Williams thirteen hundred dollars in cash for his machine and to deliver to him Findley's old tractor and attachment valued at five hundred dollars. At the

same time, Williams arranged to purchase another new machine from Pacific Hoist & Derrick Co. to replace the one which he was selling to respondent.

In accordance with the arrangements agreed upon, Findley surrendered his old machine to respondent, whose officers in turn had him deliver it to Pacific Hoist & Derrick Co. At approximately the same time, Williams executed to respondent a bill of sale of his tractor and attachment and delivered the machinery at a vacant lot, owned by respondent or an affiliated company, on the outskirts of Seattle, where Findley was directed by respondent to take possession of it. Respondent issued its check for thirteen hundred dollars to Williams, who immediately indorsed it over to Pacific Hoist & Derrick Co. to apply on his purchase of a new tractor.

On the same day, and as part of the arrangements effected, respondent and Findley executed a written agreement, in form a conditional sale contract, whereby respondent agreed to sell and Findley agreed to purchase the tractor and attachment which Williams had purportedly sold and delivered to respondent at its premises. The purchase price designated in the contract was $2,030, against which Findley was given a credit of five hundred dollars for his old tractor and attachment, leaving a balance of $1,530 to be paid by Findley in monthly installments of one hundred dollars. The contract did not call for any interest on the deferred installments. It will be observed that the total amount which Findley was to pay respondent under the alleged conditional sale contract was two hundred thirty dollars more than the amount which respondent had paid Williams for the same tractor and attachment.

The purported conditional sale contract contained the usual provision with reference to retention of title

by the seller until the full purchase price should be paid, with authorization to respondent to retake possession of the tractor at any time or place if Findley should fail to make any of the agreed monthly payments and, in such event, to retain all payments theretofore made by Findley, as rental for the use of the property and as liquidated damages. Upon these terms and conditions, Findley was allowed to take the Williams tractor and attachment from the premises where Williams had made delivery to respondent.

At the time the property was seized by the sheriff under appellant's writ of attachment, Findley was not in arrears in any of his installment payments. Having posted a bond, pursuant to the statute, and taken possession of the machine from the sheriff, respondent sold the property to a party not involved in this action.

At the trial, appellant, on cross-examination of respondent's officers, elicited the information that respondent was primarily engaged in the investment business and had only occasionally acted as a broker or distributor of personal property. He established, furthermore, that respondent's officers did not even know from whom they had purported to purchase the tractor and attachment which they contend they later sold to Findley. The two officers both asserted that they had acquired the machine from Pacific Hoist & Derrick Co., and neither of them was clear as to the position of Williams, who was in fact the true owner of the equipment in question. It was also made clear in the course of such cross-examination that no one connected with respondent had ever seen the tractor and attachment prior to the alleged purchase thereof from Williams, and, further, that the machine had been resold to Findley even before it had been delivered to respondent as mentioned above.

Respondent's officers and Findley himself, however,

testified that the agreement between them was exactly as evidenced by the conditional sale contract itself, and that Findley had agreed to purchase the tractor and equipment from respondent on a monthly installment basis because he was financially unable to purchase the same property direct from Williams for cash. Under his arrangement with respondent, the difference between the price at which respondent bought the property and the price at which it sold to Findley was claimed by respondent to represent its profit on the transaction. The trial court found in accordance with respondent's contentions and rendered judgment accordingly.

This court has held that it is not the office of a conditional bill of sale to secure a loan of money. Its purpose, rather, is only to permit an owner of personal property to make a bona fide sale on credit, reserving title in himself, for security, until the purchase price is fully paid. *Lyon v. Nourse,* 104 Wash. 309, 176 Pac. 359. This particular security device, with its severe remedial incidents, is not favored in the law, and its use has been restricted to situations where persons standing in the actual relation of vendor and vendee have desired to effect a credit sale. It is in such cases that it finds its only legitimate use.

Where, on the other hand, one who is the owner of a particular chattel wishes to borrow money and is willing to let the chattel stand as security for his debt, a chattel mortgage is the appropriate means for affording such protection to the creditor. And this is as true where the property mortgaged is purchased with the borrowed funds as where it has long been in the borrower's possession.

Cases have arisen in this state in which attempts have been made to employ a conditional bill of sale to secure the interest of one who, though purporting to

sell the chattel involved, merely lends money to facilitate its purchase from a third person. But this court has uniformly refused to sanction such a misuse of the conditional bill of sale. Thus in *Lyon v. Nourse, supra,* one who lent money to take up the draft attached to the bill of lading for a car consigned to his borrower tried to secure his loan by giving the latter a conditional bill of sale covering the car. This court held that the lender could not in this way secure the payment of his debt without the formalities required by the statutes governing the execution of chattel mortgages. See, also, *Mahon v. Nelson,* 148 Wash. 110, 268 Pac. 144, where a similar attempt to make a conditional bill of sale perform the function of securing the repayment of money was also held improper.

Again, in *Olsen v. Legal Adjustment Bureau,* 142 Wash. 446, 253 Pac. 643, the parties went one step further, the borrower executing a bill of sale of the chattel security to his lender and immediately taking back a conditional bill of sale of the same property. That method was also held to come within the rule of the *Nourse* case, *supra,* and this stand has since been reaffirmed in *Kelly v. Price,* 148 Wash. 542, 269 Pac. 842, where it was said that security should have been taken by chattel mortgage. In *Seaboard Dairy Credit Corp. v. Paulsen,* 174 Wash. 594, 25 P. (2d) 974, this court said of such a transaction:

"While purporting to be a conditional sales contract and, as such, duly filed in the office of the auditor for Clark county, the instrument was, in fact—the court so found and no error is assigned on that finding—a chattel mortgage. However, the instrument was not filed as a chattel mortgage, nor was it accompanied, as the statute requires, by the affidavit of the mortgagor that it was made in good faith."

It was therefore held that the subsequent mortgagees of the property covered by the alleged conditional sale

contract had acquired rights in that property superior to the right of the vendor named in the purported contract of conditional sale. See, also, *In re Sachs* (C. C. A. 4th, 1929), 30 F. (2d) 510; *In re James* (C. C. A. 2d, 1929), 30 F. (2d) 555; *Commercial Securities Corporation Consolidated v. Lindsay Mercantile Co.* (1928), 92 Cal. App. 91, 267 Pac. 766; *Payne v. Parker* (1909), 95 Miss. 375, 48 So. 835.

The cases above discussed or cited establish the rule that any attempt to employ a conditional bill of sale for the purpose of securing money lent will not receive judicial sanction, regardless of the intention of the parties so to use it. The problem is not one of determining whether the parties intended to mould their transaction into the form of a conditional sale rather than that of a chattel mortgage, but of deciding whether in a pure financing arrangement the conditional sale can ever be adopted as a means of securing a loan. And the answer is that the contract of conditional sale may be used only by an actual vendor in the economic sense, and not by one who in a particular transaction occupies the status of a financier or lender of money, even though the latter may go through the form of taking title and possession of the chattel which he purports to sell, as respondent has done in this case. To permit the use of the conditional sale by mere lenders of money would enable them not only to avail themselves of the extraordinary remedies of the conditional vendor but also to evade the provisions of the usury laws by marking up the "price" charged to the borrower so as to include, in the guise of a "profit," a return in excess of that permitted by law.

In the light of these rules, the conclusion is inevitable that, as to the tractor and attachment here involved, respondent does not come within the class of those entitled to employ a conditional bill of sale as a

means of security. This conclusion does not rest solely on the fact that respondent is primarily engaged in the finance and investment business, although that fact may raise an initial question as to the validity of its resort to a conditional sale in any case. The use of the conditional sale contract is not restricted to merchants; it may be employed by anyone who actually makes a sale and assumes the risks incident to the business of selling goods. In the course of its regular business, respondent might on occasion be forced to take over property in order to protect its equity therein, and in such cases, having assumed the risks of ownership, it would be entitled to sell such property under contracts of conditional sale. But that is not the case here. Findley located the tractor and attachment, discussed terms with the owner thereof, and then called on respondent for the necessary financial assistance. Despite the care exercised in routing title through itself and in taking technical possession of the tractor, respondent was a mere moneylender in a financing arrangement incident to a sale of the tractor and attachment by Williams to Findley. We therefore hold that, despite the intention of the parties to cast their transaction in the form of a conditional sale, their purpose cannot be recognized and given effect.

In consequence of the foregoing conclusion, it follows that, as between respondent and Findley, the attempted conditional sale gives rise to a chattel mortgage, the validity of which, as to third persons, is dependent upon the statutes governing the execution and filing of such mortgages.

■ This proceeding was instituted, as heretofore stated, under Rem. Rev. Stat., § 573, allowing third parties to assert their claims to property levied upon or attached as the property of another. The statute requires, among other things, that such a third-party

claimant shall make affidavit that the property is his, or that he has a right to the immediate possession thereof. The transaction between the respondent and Findley having been determined to be, in law, a chattel mortgage, this case is controlled by the rule of *Sayward v. Nunan*, 6 Wash. 87, 32 Pac. 1022, where a third-party claim was sought to be interposed under the same statute now invoked on behalf of respondent. The court there determined that the security transaction between the parties was in fact, as here, a chattel mortgage, and then said:

"If said instrument is to be regarded as a chattel mortgage, the property not having been reduced to the possession of the mortgagee, he could not maintain this proceeding as owner to recover possession thereof under the holdings of this court, as a chattel mortgage under our law does not pass the title to the property, but only creates a lien thereon."

The respondent, therefore, not having title or the right to immediate possession, is not entitled to bring this action under the above-mentioned statute.

The judgment is therefore reversed, with direction that respondent and its surety be ordered to pay to appellant Severyns, in accordance with Rem. Rev. Stat., § 577 [P. C. § 7847], the value of the tractor and attachment here involved, or such less amount as shall not exceed the amount due on appellant's writ of attachment. Nothing in this opinion, however, is to be construed as prejudicing respondent's right to seek to enforce its claim against the property in question, or, in lieu thereof, against the amount paid by it to the sheriff, in any other proceeding which may lawfully be available to it. Appellants will recover their costs on this appeal.

ROBINSON, C. J., MAIN, MILLARD, and DRIVER, JJ., concur.