[No. 16787.   Department One.   February 14, 1922.]

General Motors Acceptance Corporation, *Appellant,*

v. Arthaud Land Company, *Respondent.*[1]

Sales (179-1)—Conditional Sales—Assignment of Contract—Effect—Rights of Subsequent Mortgagee—Estoppel to Assert Title. Where an automobile dealer sells a car under a conditional sale contract, taking a promissory note for deferred installments of the price, which together with the contract is assigned to another, and, the dealer, as agent of the assignee, subsequently repossesses himself of the car for nonpayment of the balance due and places it among his stock, and mortgages it to a third party, the assignee of the contract cannot replevin the car from the mortgagee; since he brings himself within the rule that where one of two equally innocent persons must suffer, that one whose act or neglect makes a fraudulent act possible must bear the loss occasioned thereby.

Appeal from a judgment of the superior court for Grays Harbor county, Abel, J., entered May 25, 1921, in favor of the defendant, dismissing an action of replevin.   Affirmed.

*J. E. Stewart,* for appellant.

*F. L. Morgan,* for respondent.

Tolman, J.—Appellant, as plaintiff below, brought this action to recover possession of a certain automobile, claiming ownership thereof under a conditional sale contract assigned to it by the vendor therein

[1]Reported in 204 Pac. 194.

named. From a judgment denying it the relief sought, this appeal is prosecuted.

It appears that, on November 18, 1919, one Louis J. Mason, an automobile dealer of Hoquiam, Washington, entered into a conditional sale contract in writing with one Jack Allen, wherein and whereby he agreed to sell the automobile now in question to Allen, upon the terms and conditions therein stated, the title to be retained by Mason until the conditions were fully performed. At the same time and as a part of the same transaction, Allen executed and delivered to Mason a promissory note evidencing the deferred payments referred to in the conditional bill of sale, which note provides, "This note covers deferred installments upon a conditional sale contract made this day between the payee and the maker hereof," and the conditional sale contract also sets forth that the deferred payments are evidenced by a promissory note designated a negotiable instrument, and further provides that neither the delivery of the note by the purchaser or the negotiation or discounting of it by the seller shall be deemed a payment of the purchase price, and "that title to the said property shall not pass to the purchaser until such negotiable instrument and any interest due are fully paid in cash, with or without legal process, and this to include any judgment secured." Other features of this conditional sale contract will be noticed as we proceed.

At the time of executing the contract, it was signed by both the seller and purchaser in triplicate, that is, by the use of carbon sheets three duplicates were filled out and signed by the same impression of pen or pencil. The first of these duplicates is called the "white sheet," the paper being white in color, and it is exactly the same in all its details as the other two sheets ex-

cept for the color, certain marginal notes which we regard as immaterial, and a printed form of assignment on the back, which the other two sheets do not possess. Immediately following the execution of this contract in triplicate as stated, Louis J. Mason dated and signed the assignment on the first or white sheet, which is as follows:

"For value received the undersigned does hereby sell, assign and transfer to General Motors Acceptance Corporation, San Francisco, California, his, its or their right, title and interest in and to the within contract, and the property covered thereby, and authorizes said General Motors Acceptance Corporation to do every act and thing necessary to collect and discharge the same.

"In Witness Whereof, said undersigned has hereunto subscribed his, its or their name the 18 day of Nov., 1919.

"(Signed) Louis J. Mason."

This white sheet, so endorsed, was by Mason attached to a draft for the unpaid portion of the purchase price of the automobile, forwarded by him to a bank in San Francisco, through which he received from appellant the money called for by the draft, and the contract bearing the assignment passed into, and has ever since remained in the possession of appellant. On November 20, 1919, or two days after the date of the contract, the second or so-called "yellow sheet" of the triplicate contract was duly filed for record in the office of the auditor of Grays Harbor county. This sheet so filed contained no reference whatever to the General Motors Acceptance Corporation or to the assignment, and there was nothing thereon or subsequently filed in the office of the auditor of Grays Harbor county in any way indicating the assignment of the contract by Mason to the appellant. The promissory note executed by Allen as a part of the transaction was also endorsed

by Mason and delivered to appellant, probably being attached to the draft and delivered at the same time the contract was delivered. The installment note given with the contract bears the following endorsements subsequent to Mason's endorsement:

"Pay to the order of Union Trust Company, San Francisco, Sub-trustee under trust deed dated May 8, 1919.
            "General Motors Acceptance Corporation,
                    "By C. R. Warren, Secretary."
and also:

"Without recourse pay to the order of General Motors Acceptance Corporation.
            "Union Trust Company of San Francisco,
                    "By L. J. Fay, Cashier."

and these endorsements are thus explained by one of appellant's officers who testified in the case:

"Q. I call your attention (I want to call the court's attention at the same time) to an endorsement on the back of this note 'pay to the order of the Union Trust Company of San Francisco.' Apparently that note was assigned to the Union Trust Company? A. No. We put it in trust in San Francisco, that is all. Q. And later apparently it was reassigned without recourse to the General Motors Acceptance Corporation by the Union Trust Company? A. Yes, because we paid it in full to the Union Trust Company in order to get possession of it."

It appears that Allen, the conditional vendee, was a salesman employed by Mason, and though there is some ground to suspect that, as between them, the sale was a colorable one only, yet both testify that, upon the making of the contract, Allen was given possession of the automobile, used it as he saw fit, but except as he might be out of town upon occasions with the car, he kept it stored while not in use in Mason's garage. Allen testified that he made none of the deferred pay-

ments whatever, and after keeping the car for a time and driving it some two thousand miles, partly for his own pleasure and partly for demonstration purposes in connection with his duties as salesman for Mason, he surrendered the car to Mason. The exact date of such surrender is not fixed, and since apparently appellant had no notice thereof it is not now very material. After Mason had repossessed the car from Allen, and before appellant was advised of that fact, Mason on May 17, 1920, borrowed from respondent the sum of $2,000, gave a demand note therefor with interest at the rate of eight per cent, and to secure the payment of the note made and duly executed a chattel mortgage to respondent covering four certain automobiles therein described, one of which is the car in question, which chattel mortgage was, on the succeeding day, duly filed for record. It seems to be admitted that at the time this mortgage was made, the car in question was in Mason's garage, with every indication that it was a part of his stock in trade; that it was there examined by respondent's agents at the time the loan was made and the chattel mortgage accepted, and that respondent had no knowledge of any fact sufficient to put it upon notice that Mason was not the absolute owner thereof. In fact, it is admitted that neither of the parties to this action had any knowledge or notice of the rights of the other until after those rights had become fixed. In due course, by reason of the financial difficulties of Mason, respondent took possession of the car by virtue of its chattel mortgage, and thereafter appellant, learning of that fact, made demand for the surrender of the car to it, which being refused, this action was instituted.

Appellant contends that, by reason of the assignment of the contract, it became the owner of the car, subject only to the vendee's rights; *Barbour v. Hodge,*

99 Wash. 578, 170 Pac. 115; *State Bank of Black Diamond v. Johnson,* 104 Wash. 550, 177 Pac. 340; and by reason of the terms of the contract permitting the negotiation of the note without thereby affecting the reserved title, the claimed non-negotiability of the note because of the recitals therein referring to the contract, and, in any event, because of the fact, as claimed, that the note was not negotiated, but simply endorsed to a trustee, who cannot be presumed to be a purchaser before maturity for value and without notice, the facts do not warrant the application of the rule laid down in *Winton Motor Carriage Co. v. Broadway Automobile Co.,* 65 Wash. 650, 118 Pac. 817, 37 L. R. A. (N. S.) 71.

Assuming, without deciding, that, for present purposes, these points are well taken, what then follows? Appellant argues that the case of *State Bank of Black Diamond v. Johnson, supra,* is controlling; that, under the authority of that case, Mason, having no title, could convey nothing, and as against appellant the chattel mortgage was a nullity, and challenges us to point out by what act of omission or commission the title which appellant acquired by reason of the assignment to it of the contract has been lost. The answer, we think, is both simple and logical. Assuming the title to be vested in appellant by reason of the assignment, which in terms conveys both the contract and the property therein described, it must be admitted that, though in the *State Bank of Black Diamond* case such assignment was filed for record, and noted in the index kept by the county auditor, we there, in effect, held that such filing was not constructive notice because not required by the conditional sales statute. Rem. Code, §§ 3670, 3671 (P. C. §§ 9767, 9768). Nor can we here hold that the assignment should have been recorded as a bill of sale (though it is such in effect) under Rem. Code, § 5291 (P. C. § 7747), because the property was not left

in the possession of the vendor, Mason, but passed into the possession of the vendee, Allen, notwithstanding the fact that he kept it, presumably for his own convenience, in Mason's garage. How then did appellant lose its title or become estopped from asserting title as against respondent? As assignee of the conditional sale contract, appellant became bound by all of its terms, and, among other things, the contract provides:

"It is further agreed that if said negotiable instrument, or any part thereof is not paid at the time and place therein specified, . . . . the balance unpaid on said negotiable instrument shall become due and payable immediately at the election of the holder of said negotiable instrument, and in that event the seller may take immediate possession of the said property, for the benefit of the holder of the said negotiable instrument. . . . . Purchaser further agrees that seller may sell said property so taken, at public or private sale, with or without notice to purchaser, and with or without having said property at the place of sale, upon such terms and in such manner as the seller may determine; and seller or the holder of said negotiable instrument shall have the right, at any public sale to purchase the said property. The proceeds of any public or private sale, after deducting therefrom the expenses incurred by seller in protecting his rights, shall be applied to the amount due holder of said negotiable instrument under this contract, and any surplus remaining shall be paid over to purchaser."

These provisions of the contract clearly recognize that, at the time of the default, the seller might not be the holder or owner of the negotiable instrument, and in plain terms the possibility that the seller and the holder of the negotiable instrument may be separate and distinct persons is clearly recognized. And notwithstanding that the seller may have parted with all financial interest in the contract by reason of the transfer of the negotiable instrument, he is, by the provi-

sion quoted, given the right upon default to take immediate possession of the property for the benefit of the holder of the negotiable instrument. Or, if the quoted provisions of the contract be construed to mean that the seller may not thus take possession without the holder of the negotiable instrument having first elected to declare the whole sum due, then there is nothing in the contract to show how that election shall be evidenced, or justify the vendee in demanding any such evidence, and upon default occurring and the demand for possession being made by the seller, the vendee and all others are justified in assuming that the seller is duly authorized to take such possession. In either event, this is exactly what was done in this case. Allen, the purchaser, made default. Mason, the seller, repossessed himself of the automobile, and under the terms of the contract he thus took possession for the benefit of the appellant, who was then the holder of the negotiable instrument. Appellant, as the assignee of the contract, with knowledge of its provisions, was bound to know of the taking of such possession by the seller, Mason, as its agent, at its peril, and there is ample evidence in the record to put it upon notice as to those facts. It is undisputed that Allen, the purchaser, made none of the deferred payments whatever. Hence if any payments were made to appellant they were made by Mason, and that fact is admitted upon the witness stand by Mr. Storey, the branch manager of appellant's Portland office, and confirmed by letter written from its California office dated as late as March 18, 1921, addressed to Mason, which says:

"Your attention is invited to the account of Jack Allen. This car is in your possession and as the October and November installments are past due we must

ask that you mail your check in the amount of $245.00 to bring the account to a close."

Thus indicating, at least, that appellant at all times looked to Mason to make the collections from Allen, as its agent, and remit them. While it is denied that appellant knew that Mason had repossessed himself of the car prior to the time when the mortgage was given to respondent, yet, in view of the terms of the contract, it was its duty at all times to know the exact conditions relating to this car. It had appointed Mason as its agent by the terms of the contract, and by its course of dealing, and when it permitted its agent, acting with apparent authority under the terms of the contract, to retake possession of the car, place it in stock in his garage, with every indicia of ownership in him, it thereby put it within his power to deal with it as his own, to sell it and pass title to an innocent purchaser, or to mortgage it, as he did. Indeed, as we read the contract, he was expressly authorized to sell it, and under these circumstances appellant is estopped from asserting its title as against respondent's mortgage, made in good faith in reliance upon Mason's possession and apparent title. It is a familiar rule that possession and apparent right of possession is evidence of title, and equally well settled that a case such as this where one of two equally innocent persons must suffer, that one whose act or neglect made the fraudulent act possible must bear the loss occasioned thereby.

We conclude that, under the terms of the contract, it was appellant's duty to keep itself advised as to whether or not the vendee was performing the conditions of the contract; that it was bound to know of his default and of the taking of possession of the automobile by Mason under the terms of the contract, and should forthwith have required the car to be sold as in the contract provided, possessed itself of the same to

the exclusion of Mason, or taken some position which would have given unequivocal notice to those dealing with Mason as to what its rights were in the premises.

The judgment of the trial court was right and is affirmed.

Parker, C. J., Bridges, Fullerton, and Mitchell, JJ., concur.