[No. 17897.   Department Two.   November 15, 1923.]

WESLEY LLOYD, as Receiver etc., Appellant, v.
MacCALLUM-DONAHOE COMPANY, Respondent.[1]

SALES (170, 172)—CONDITIONAL SALES—DISTINGUISHED FROM OTHER TRANSACTIONS—CHATTEL MORTGAGE—CONTRACT CREATING CONDITIONS ON TRANSFER OF TITLE. Where an insolvent corporation in the business of selling automobiles conditionally sold cars and took the prospective purchasers to a finance company, which made conditional sales of the cars direct to the purchaser, paying to the insolvent the amount of the deferred payments which the purchaser was to repay to the finance company, creditors of the insolvent cannot complain that the transaction amounted to a mere loan of money on an attempted chattel security, void because not executed and recorded in conformity to the statutes, where all the parties to the transaction treated it as a sale from the insolvent to the finance company and a resale to the purchasers; since the transaction violates no statute or rule of public policy.

SAME (170, 172). By such a transaction the insolvent parted with its title for full value, and if the contracts were invalid only creditors of the purchasers could legally complain.

RECEIVERS (36)—TITLE OR RIGHT ACQUIRED BY RECEIVER. In such a transaction, the receiver of the insolvent corporation, representing creditors, has no greater right or title than the insolvent had.

SALES (177)—CONDITIONAL SALES—OPERATION AND EFFECT AS TO THIRD PERSONS. The fact that the insolvent, upon the default of the purchasers, repossessed the cars, and sometimes paid the balance due or would resell the cars at a price to make the deferred payments, is immaterial to the rights of creditors of the insolvent, where the cars were surrendered and received as the property of the finance company.

SAME (177). In such transactions, it is immaterial that the insolvent guaranteed the conditional sales contract made by the purchasers, where it does not appear that the finance company insisted upon, or collected, the guarantee.

SAME (180)—ESTOPPEL (38)—CONDITIONAL SALES—WAIVER OF CONDITION—CLOTHING ANOTHER WITH APPARENT TITLE. In such a case, it cannot be urged that the finance company is estopped to assert its title and that its conduct is inconsistent with the idea of a conditional sale by reason of the fact that it clothed the insolvent with every indicia of ownership and created a false credit, by allow-

[1]Reported in 219 Pac. 849.

ing it to display and offer for sale and sell the cars and apply the proceeds, where it is not shown that any particular creditor had been deceived or had been led to give the insolvent credit thereby.

Appeal from a judgment of the superior court for Pierce county, Askren, J., entered September 23, 1922, upon findings in favor of the defendant, in an action for conversion, tried to the court. Affirmed.

*Arthur Remington* and *Remann & Gordon*, for appellant.

*George L. Spirk* and *C. E. Stevens*, for respondent.

FULLERTON, J.—In this action, the receiver of the Broadway Motors Company seeks to recover the value of certain automobiles which he alleges to be the property of the motors company named, and which he alleges the respondent MacCallum-Donahoe Company took and converted to its own use. After issue had been joined on the allegations of the complaint, a trial was had before the court sitting without a jury, resulting in a denial of the right of the receiver to recover. The receiver appeals.

The facts of the case are not complicated. The Broadway Motors Company was engaged, as a part of its business, in buying automobiles from the manufacturers and selling them to users. Some of its sales to users were made on the instalment plan. In many instances of such sales, the motors company was unable or was unwilling to finance the purchaser, and in these instances it would seek some banking corporation, or some company willing to take on itself the obligation. The respondent was a company engaged in that business. In dealing with it, the motors company, when it found a purchaser for a car, would take the purchaser to the respondent, whereupon the respondent would enter into a contract of conditional sale with

the purchaser wherein the respondent would reserve in itself title to the car, and wherein the purchaser would agree to pay to it the instalments due on the purchase price. The respondent would thereupon pay to the motors company the price the purchaser agreed to pay, less its charges for taking over the contract, usually two per centum of the purchase price, and the motors company would thereupon deliver the car to the purchaser. In certain instances, where the respondent was without knowledge of the character or standing of the purchaser, it would require the motors company to guarantee the contracts.

It sometimes happened that the purchaser would fail to complete his contract of purchase, whereupon possession of the car would be taken from him. On such taking, the cars were usually turned over to the motors company, which company would itself in some instances pay the balance due to the respondent on the contracts of sale, and would in other instances endeavor to resell the cars at such a price as would make the deferred payments.

At the time of the appointment of the receiver for the motors company, that company had in its possession some nine different cars which had been sold and returned under the circumstances above stated. The respondent claimed title to and right of possession of the cars, and demanded possession of them from the receiver. That officer, after investigating the circumstances, conceived that the cars belonged to the respondent, and turned them over to it. The respondent thereupon took possession of them and resold them severally, in no instance receiving for the sale of a car a sum equal to the amount due it as represented by the contract under which it was sold. Subsequently, the receiver was led to believe that his act in surrendering the cars was in violation of his duty as such receiver,

and thereupon instituted the present action, with the result as hereinbefore stated.

The receiver first argues against the validity of the conditional sales contracts entered into between the respondent and the purchasers, contending that there was no sale of the cars by the motors company to the respondent; that, in consequence, the respondent had no title which it could reserve by a conditional sales contract; and that the respondent's part in the transaction was a mere loan of money on an attempted chattel security, void because not executed in conformity to the statutes relating to the execution of chattel mortgages.

But while a somewhat extended argument has been offered on the question, we do not find it necessary to notice it in detail, or notice it further than to say, in passing, that we are by no means convinced that the transaction should not be given effect according to the evident intent of the parties. The parties themselves, that is to say, the motors company, the respondent, and the individual purchasers of the cars, treated the transaction as a sale from the motors company to the respondent, and a resale by the respondent to the purchasers. It is, therefore, difficult to understand why the transaction should not be regarded in law as the only parties interested regarded it in fact. It is a general rule that an owner of property may make such contracts with reference to it as he chooses, and that his contracts will be upheld by the courts so long as they violate no provision of express statute or do not run contrary to some rule of public policy. It is at once manifest no statute or rule of public policy was violated by these transactions.

But the conclusive answer to the receiver's contentions is that to hold with them would in no way aid the receiver in the prosecution of the present action. There

is no question that the motors company, by the transaction, not only parted with its title to the cars, but parted with its possession and right of possession to them. It was paid in cash the full value of each car, before it parted with its possession. Its intent was to sell the cars, and it is idle to say that its acts did not in law constitute a sale. Since it sold them, it had no further interest in them; and if the contracts of sale entered into between the respondent and purchasers are invalid, that consideration did not reinvest the motors company with title. If these contracts are invalid, the purchasers of the cars or the creditors of the purchasers might legally complain, but no such right remained in the motors company.

Nor does the receiver have any higher or greater rights. A receiver, as the representative of the creditors of his principal, can sometimes set aside transfers made by the principal which the principal himself cannot set aside. But this right arises only where the transfer is made in fraud of the creditors. Transfers in good faith and for value are not of that sort; this, if for no other reason, because they work no diminution of the transferrer's estate, thus working no injury to the creditor.

Nor is the situation affected by the fact that the motors company repossessed itself of the cars. This gave it no title. The title to the cars was, on any theory, either in the respondent or the contract purchasers. Since the contract purchasers surrendered them as the property of the respondent, and since the motors company received them as the property of the respondent, surely the receiver cannot be heard to say that the respondent had no title and that the surrender for that reason vested the title to the property in the motors company.

But it is said that the motors company guaranteed the contracts of conditional sale as to certain of the cars, and that as to these the receiver had a right of possession and may recover for their conversion. It is doubtless true that, had the respondent insisted upon the guarantee, and had collected on the guarantee from the motors company, the act would have vested the title to the particular car in the motors company. But nothing of this sort happened. There was no insistence, nor was there any payment. The respondent took the cars in satisfaction of the obligations. This was a waiver of the guarantee, and left no vestige of right in the motors company. The motors company having no right, the receiver can have none.

Again, it is said that the

"Respondent is estopped to assert title by its course and conduct. Clothing a vendee with every indicia of ownership and creating a false credit, allowing it to display and offer the property for sale, or sell it and apply the proceeds, is inconsistent with the idea of a conditional sale, and estops the vendor from asserting title."

If we have correctly gathered what is here meant, it is that the respondent, by leaving the cars in the possession of the motors company, thereby gave the motors company a false credit, and may thereby have induced some one to become a creditor who otherwise would not have become such, and that the receiver may, because of the possibility of such a happening, assert an estoppel. What would have been the rule as to a particular creditor, had it been shown that he had been deceived and had been led to credit the motors company because of the false appearance of assets, we need not consider, as nothing of the kind was shown. But as a general doctrine, we cannot subscribe to it. It is a common thing for an owner of property to place

it in the hands of a broker or factor for sale, and, in so far as we are advised, no court has yet held that he thereby subjects his property to the debts of the broker or factor. On the contrary, we have held that he does not. *Eilers Music House v. Fairbanks,* 80 Wash. 379, 141 Pac. 885.

Other questions discussed require no separate consideration. Nor do we feel called upon to notice specially the many cases cited in the brief of the receiver. The rule they announce on the points determined, is not, of course, questioned. Any review of them, therefore, would be but to show their inapplicability to the questions presented here.

The judgment is affirmed.

MAIN, C. J., PARKER, TOLMAN, and PEMBERTON, JJ., concur.