[No. 22898.  *En Banc.*  June 25, 1931.]

A. E. BAUER, *Respondent,* v. COMMERCIAL CREDIT
COMPANY, *Appellant.*[1]

*Lund & Dodds,* for appellant.
*Miller & Freese,* for respondent.

MILLARD, J.—A. E. Bauer instituted this claim and
delivery action to establish his title to and to recover
possession of a Willys-Knight coupe. The trial of the
cause to the court resulted in judgment in favor of the
plaintiff. The defendant has appealed.

The Dunn Motor Company, distributor for Willys-
Knight automobiles at Ritzville, Washington, sold and
delivered to the respondent on October 9, 1929, a Wil-
lys-Knight coupe. At that time, the Dunn Motor Com-
pany was being financed by the Pacific Finance Cor-
poration, which held an unrecorded bill of sale to
secure an unpaid balance of $851 due from the motor

[1]Reported in 300 Pac. 1049.

company on the coupe. The motor company did not, when it made the sale to respondent, pay the finance corporation or procure a satisfaction of the conditional sale contract. The respondent did not have actual or constructive notice of the unrecorded bill of sale.

Respondent used the coupe, driving it approximately fourteen hundred miles, until December 26, 1929, when he returned it to the Dunn Motor Company to sell for him. The only limitation imposed was that the car should be sold for not less than $1,075. Respondent turned back the speedometer to indicate that the car had been operated a distance of only eighty-seven miles. The car was put in the show room of the motor company with a number of new cars offered for sale to the public. The automobile remained in the show room of the motor company continuously from December 26, 1929, to May 12, 1930.

Bauer placed in a local bank a bill of sale running from the Dunn Motor Company to himself, which bill of sale was never placed on record. Why such bill of sale was deposited in the bank is not disclosed. This is not a factor of any importance. Only the bank, the respondent, and the motor company knew anything about it. The appellant was not aware of the true situation, nor did it have any notice thereof.

In April, 1930, the Pacific Finance Corporation demanded payment by the motor company of the balance of $851 due on the coupe. Appellant, also engaged in the business of financing automobile dealers, had been ''flooring cars'' for the motor company for some time. That is, when a shipment of new cars ordered by the Dunn Motor Company arrived, the appellant would take up the draft, which was attached to the bill of lading, and issue a trust receipt to the Dunn Motor Company, which was then permitted to place the cars

in its show rooms and sell the same. On April 18, 1930, the appellant wrote to the Dunn Motor Company as follows:

"We are enclosing your conditional sale contract, made out as you requested. Will you fill in the type of body on the typewriter and be sure and see that it is signed in the places checked with blue pencil. I hope that this has saved you some trouble and trust that you will favor us with some more contracts soon."

Shortly thereafter, the Dunn Motor Company wrote the following to the appellant at the bottom of the letterhead on which the foregoing was written:

"We are 'flooring' through the Pacific, one Willys-Knight coupe De Luxe 30, Model 70B, with a balance due of $851. Would you care to take that up and that will clean me of flooring through them? Car cost $1152.80, Serial No. 112,057, Motor No. 120,050."

On April 25, 1930, the appellant was advised through the Retail Credit Company that the car was on the floor of the Dunn Motor Company's garage at Ritzville; that it was a new car and had been run only eighty-seven miles. There is no contention that the loan made by the appellant to the motor company was not made in good faith, nor does respondent claim that appellant had either knowledge or notice that the car belonged to the respondent.

It appears from the testimony that the appellant would not lend any money to the motor company until the motor company paid the Pacific Finance Corporation. There is no showing that the appellant supplied the funds with which to pay the Pacific Finance Corporation. The appellant was informed April 25, 1930, by the Pacific Finance Corporation that the balance due the latter of $851 on the coupe had been paid by the Dunn Motor Company. The appellant then advanced to the motor company $851 and took a trust receipt with draft attached, due within sixty days.

The Dunn Motor Company failed in business the early part of May, 1930. On May 12, 1930, the appellant took possession of the car and placed same in a garage across the street from the motor company's garage at Ritzville. The respondent then made a claim to the car, which was appellant's first knowledge or notice of respondent's interest in the coupe. This car and others belonging to the appellant were started for Spokane. Respondent commenced replevin action and the sheriff of Adams county overtook appellant and took possession of the coupe.

The appellant contends that the transaction between it and the motor company was a sale; that Bauer gave the motor company possession of the car for the purpose of selling the same and that it was sold by the motor company to the appellant, which had neither knowledge or notice of the claim of respondent, therefore the provisions of Rem. 1927 Sup., § 5836-25, reading as follows, are applicable:

"Where a person having sold goods continues in possession of the goods, or of negotiable documents of title to the goods, the delivery or transfer by that person, or by an agent acting for him, of the goods or documents of title under any sale, pledge, or other disposition thereof, to any person receiving and paying value for the same in good faith and without notice of the previous sale, shall have the same effect as if the person making the delivery or transfer were expressly authorized by the owner of the goods to make the same."

There was no sale of the coupe by the respondent to the Dunn Motor Company. The evidence conclusively establishes the fact that the transaction between the appellant and the motor company was not a sale, but a loan by the appellant upon the car.

That the respondent had good title to the coupe at the time he purchased it on October 9, 1929, from the

motor company, is conceded by appellant. Respondent paid to the motor company the purchase price of the car and took possession of the same, which possession he retained for more than two months. No conditional sale contract was of record. Respondent's title to the car was clear at that time of all liens and incumbrances.

The motor company was authorized by the respondent, when he placed the automobile with it December 29, 1929, to sell the car for not less than $1,075. The appellant is in the business of financing automobile dealers, that is, lending money on cars. It is not in the business of buying and selling automobiles. The automobile in controversy was not purchased by the appellant for its own use. Appellant first learned of the existence of the coupe when Dunn informed it that a coupe was being ''floored'' or financed by the Pacific Finance Corporation, and that a balance of $851 was due the Pacific Finance Corporation on the coupe. Dunn then inquired whether appellant would take over the financing. Appellant's manager testified:

''I say he, Mr. Dunn, came into our office on that afternoon, probably some time after lunch, as I recall it, and wanted us to refloor the car for him, and I told him in the course of our business we would first ascertain whether or not the car was paid for with Pacific, and we would also find out whether or not the car was on his floor, because we did not floor cars for any dealer unless we knew that the dealer had possession of the car.''

The Pacific Finance Corporation was paid by Dunn, and the appellant then made a loan to the motor company of $851, the security for the repayment of which was the coupe. The car remained in the possession of the motor company from that time, April 25, 1930, to May 12, 1930, when appellant seized the car, which was

surrendered to the sheriff when affidavit and bond were served upon appellant in this action.

"Q. Now, when did you next have anything to do with this car? A. When I came down after it. Q. That was about May 12? A. May 12th, yes, sir. . . . Q. State whether you had to move any other cars in order to get it out? A. Well, I, of course, took the cars out, and I so moved the other ones that when I came to take this one it was comparatively simple to get it out. Q. Did you have any other cars in there? A. Yes, sir. Q. On trust receipt at that time? A. Yes, we did. Q. State whether or not you took possession of them at that time. A. We took possession of all our cars at that time."

The appellant was apprised that the coupe which the motor company mortgaged to it for the loan of $851 cost $1,152. Clearly, the appellant was not requested to purchase the car. The appellant made a loan to the Dunn Motor Company after the indebtedness thereon had been paid by the Dunn Motor Company to the Pacific Finance Corporation. The security for that loan was the coupe, the possession of which was retained by the motor company.

Section 5836-25, *supra,* is not applicable. This is not a case of a vendor continuing in possession of the goods sold, and subsequently reselling the same to a third person who purchases in good faith, for value and without notice. Respondent purchased the car from the motor company, retaining possession for more than two months. He paid the full consideration for the car. It was free from any lien. When respondent placed the car with the motor company to sell for him, that was a new and distinctly different transaction and is not in any sense related to the sale by the motor company to respondent on October 9, 1929; no more so than if he had purchased the car in Seattle

from another dealer, and two months later placed it with the Dunn Motor Company to sell for him.

Respondent insists that the transaction was a loan; that, being a loan, the mortgageee would acquire only such interest in the mortgaged car as the mortgagor Dunn Motor Company had; that the motor company had no title or interest in the automobile at the time it gave the trust receipt to the appellant and promised to pay to the appellant within sixty days $851 represented by the draft attached to the trust receipt, therefore the appellant is not entitled to claim title to, and right of possession of, the car as against him.

We have not lost sight of the general rule that title to personal property, "like a stream, cannot rise higher than its source" (24 R. C. L. 373), and that "a mortgagor can convey by mortgage only that interest which he possesses." 11 C. J. 428. We are also mindful of, and still adhere to, the rule stated as follows in *Lloyd v. McCallum-Donahoe Co.,* 127 Wash. 180, 219 Pac. 849, which, respondent insists, is authority for his position that respondent's placing of the automobile with the Dunn Motor Company for sale would not subject respondent's property to the debts of the motor company:

"It is a common thing for an owner of property to place it in the hands of a broker or factor for sale, and, in so far as we are advised, no court has yet held that he thereby subjects his property to the debts of the broker or factor. On the contrary, we have held that he does not. *Eilers Music House v. Fairbanks,* 80 Wash. 379, 141 Pac. 885."

We do not agree with the respondent that the rule applicable in the case at bar is the same as the case where one leaves his car in a garage to be repaired,

and the garage man, on the strength of possession, mortgages or sells the car.

"The general rule is that mere possession of an automobile by a bailee confers no apparent authority to sell it. Thus the possession of the car of another, for the purpose of washing it, does not raise a presumption of agency to sell the car." Blashfield, Cyc. Automobile Law, p. 2459.

"The general rule is that the mere fact that an owner of personal property intrusts it to the possession of another does not constitute holding the other out as owner, so as to estop the real owner from claiming the same from one who purchases it from the possessor.

"If one delivers property to another as a mere bailee, a purchaser from the bailee as a general rule acquires no title, however innocent he may be. He has no more right to assert title to the property than if it had been stolen, and his purchase had been from a thief. This rule applies to the case of an automobile owner intrusting it to another for repairs and allowing him to use the car for a month." Blashfield, Cyc. Automobile Law, p. 2302.

The transaction in the case at bar was not a sale. Appellant did not purchase the coupe.

The appellant did not have knowledge or notice of the fraud of the motor company. Its loan to the motor company was secured by a mortgage upon the coupe, the possession of which had been intrusted by the respondent to one (the motor company) who habitually sold such goods. Under the circumstances of this case, the appellant stands in the relation of a purchaser in good faith, and will be protected in its lien on the car as against the respondent.

It is not material whether the transaction be treated as a sale or as a mortgage. The respondent owner permitted the motor company to assume apparent ownership of the automobile for the purpose of selling the same as a new car. That possession was intrusted to

one who habitually sold such goods—the business of selling new cars. In fact, the respondent placed the car in stock in the show room with every indicia of ownership in the motor company with the power to deal with the car as its own. It follows that the respondent owner cannot defeat the right of the appellant mortgagee, who, in good faith, made a loan relying upon the apparent ownership of the possessor, Dunn Motor Company.

"It had appointed Mason as its agent by the terms of the contract, and by its course of dealing, and when it permitted its agent, acting with apparent authority under the terms of the contract, to retake possession of the car, place it in stock in his garage, with every indicia of ownership in him, it thereby put it within his power to deal with it as his own, to sell it and pass title to an innocent purchaser, or to mortgage it, as he did. Indeed, as we read the contract, he was expressly authorized to sell it, and under these circumstances appellant is estopped from asserting its title as against respondent's mortgage, made in good faith in reliance upon Mason's possession and apparent title. It is a familiar rule that possession and apparent right of possession is evidence of title, and equally well settled that a case such as this where one of two equally innocent persons must suffer, that one whose act or neglect made the fraudulent act possible must bear the loss occasioned thereby." *General Motors, etc., Corp. v. Arthaud L. Co.*, 118 Wash. 593, 204 Pac. 194.

"To the general rule that a vendor or mortgagor can convey no better title than he has, there is a well-defined exception, which is that, where the owner of property clothes another with the indicia of title, or allows him to appear as owner thereof or as having full power of disposition over the same, an innocent third person, thus led into dealing with such apparent owner with reference thereto, will be protected, in the absence of any statute affecting the situation, and the rights of such a purchaser by virtue of such estoppel will be protected both in law and in equity. This is but the enforcement of the rule that, of two innocent per-

sons, one of whom must suffer for the fraud of a third person, he who has put it in the power of the third person to commit the fraud must be the sufferer." Blashfield, Cyc. Automobile Law, p. 2303.

"Where the owner of a car employed as agent to procure a purchaser for it one who was engaged in the business of selling used cars both on his own account and for others, and delivered his car into the possession of the agent at his premises, where there were signs advertising that it was the agent's business to sell used cars, he clothed the agent with the indicia of authority to sell the car according to the custom of the trade and the general understanding of business men, so that a sale by the agent in excess of his actual authority gave good title to a buyer, who had no knowledge of the limitations upon his authority." Blashfield, Cyc. Automobile Law, p. 2306.

"Though one intrusted with the possession of an automobile of another, either as a dealer in used cars or otherwise, may have no actual authority to sell it, the owner by his acts may clothe such person with apparent or ostensible authority to sell, which will preclude the owner from disputing the transfer of the car by the possessor; and where, in addition to the possession of the car, the owner of an automobile has given to another such evidence of authority to sell as usually accompanies such authority according to the custom of the trade or the general understanding of business men, the possession of the car is evidence, not that he is the owner, but that he has received authority from the owner to sell it." Blashfield, Cyc. Automobile Law, p. 2460.

If, at the time the respondent purchased the automobile from the motor company (although he paid the full consideration therefor), he had permitted the motor company to continue in possession of the car, and the latter had sold the coupe to a third person who received and paid the full purchase price for the same in good faith and without notice of the previous sale, such third person's title would be good

as against the first buyer. The effect would be the same as though the dealer had been expressly authorized by the owner to make the sale. In principle, such case can not be distinguished from the case at bar, where the owner intrusted the car to one habitually engaged in the business of selling new cars to sell his car as a new car. The fact, as stated above, that the motor company paid the amount due to the Pacific Finance Corporation prior to obtaining the loan from the appellant, is of no importance. The absence of that factor or its presence would not be determinative of this case. Here, the owner of the coupe gave to another the possession of his car under circumstances such as usually accompany authority to sell such property according to the custom of the trade or the general understanding of business men. The possession of the car was evidence, not that the motor company was the owner, but that it had authority from the owner to sell it.

Where the owner of a car employed as agent to procure a purchaser for his car one who was engaged in the business of selling used cars, and delivered the car into the possession of the agent at his premises, where there were signs advertising that it was the agent's business to sell used cars, such owner clothed the dealer with the indicia of authority to sell the car according to the custom of the trade and the general understanding among business men, so that a sale by the agent in excess of the actual authority vested in him gave good title to the buyer who purchased the car in good faith and for value. *Carter v. Rowley*, 59 Cal. App. 486, 211 Pac. 267.

It was held in *Patterson v. Indiana Investment & Securities Co.*, 75 Ind. App. 489, 131 N. E. 19, that one who made a loan on the security of a mortgage on an automobile which the mortgagor purchased by issuing

a fraudulent check therefor, stood in the relation of a purchaser in good faith, and would be protected against the seller's claims where he had no knowledge of the mortgagor's fraud.

"One of the principles under which an estoppel arises is that where one of two innocent persons must suffer by the acts of a third he who has enabled such person to occasion the loss must sustain it. Another well-established principle is that where the true owner of property allows another, who is in the actual possession of it, to appear as the owner of it or to have full power of disposition over it, and innocent persons are thus led into dealing with such apparent owner, such persons will be protected in the rights so acquired, whether contested at law or in equity. The rights of such innocent persons 'do not depend upon the actual title or right or authority of the party with whom they have directly dealt, but are derived from the conduct of the real owner which precludes him from disputing against them the existence of the title or right or power which he caused or allowed to appear to be vested in the party making the sale.' Bigelow on Estoppel (6 ed.), p. 607." *Vanderpool v. Burkitt,* 113 Ore. 656, 234 Pac. 289.

See, also Williston on Sales (2d ed.), p. 717, § 312; *Pickering v. Busk,* 15 East 35.

The respondent, who was the true owner, intrusted possession of his automobile to a dealer who was habitually engaged in the business of selling such cars, allowing the motor company to appear as the owner of the coupe and as having full power of disposition over the property. The appellant stands in the relation of a purchaser in good faith. It was such apparent ownership, and such apparent power of disposition, that caused the appellant to advance its money and make the loan to the Dunn Motor Company, the security for which was the coupe. Under such conditions as recited above, the appellant is entitled to protection

against respondent's claim to the extent of appellant's loan. *Starkey v. Almena State Bank,* 130 Kan. 568, 287 Pac. 251, 254.

"Where the true owner of property holds out another, or allows him to appear as the owner of or as having full power of disposition over the property, and innocent third persons are thus led into dealing with such apparent owner or person having such apparent power of disposition, they will be protected. However indisputable were the intentions of the owner not to surrender his ownership, when he has surrendered the possession and exhibited the person who has that possession to the world as one having the power to dispose of the property, he will not be heard against an honest buyer who has acted upon the confidence imprudently reposed by the owner." 21 C. J. 1172.

The judgment is reversed, and the cause remanded with directions to proceed in accordance with this opinion.

TOLMAN, C. J., BEALS, BEELER, MITCHELL, and MAIN, JJ., concur.

PARKER, J., concurs in the result.

HOLCOMB, J. (dissenting)—The prevailing opinion is inconsistent within itself.

After stating, and reiterating, that respondent, at all the times concerned, had full title to the car, free from any lien or incumbrance; that the car was placed in the hands of the motor company by respondent for sale, and not for borrowing purposes (which made the motor company the broker, factor, or sales agent of respondent); that the evidence conclusively establishes the transaction between appellant and the motor company to have been a *loan* and not a sale; that all transactions respecting the car, after respondent gave the motor company possession of it *for sale,* at a stated price, were between the motor company, the Pacific

Finance Company and appellant (another financing company conveniently close at hand) without any knowledge or consent on the part of respondent; and that no evidence of title or incumbrance was placed of record; nor any transfer of possession of the chattel from that of the factor, or bailee, of respondent; the surprising result is reached that ''appellant stands in the relation of a purchaser in good faith'' and, as such, entitled to protection for the money loaned to the defrauder of ''the true owner.'' And this, after recognizing the principle that ''a mortgagor can convey by mortgage only that interest which he possesses''— which was no title or interest whatsoever, in the motor company. And also, after reasserting the principles followed in *Eilers Music House v. Fairbanks,* 80 Wash. 379, 141 Pac. 885, and *Lloyd v. McCallum-Donahoe Co.,* 127 Wash. 180, 219 Pac. 849.

The judgment should be affirmed, and I must dissent from the majority opinion.