[No. 26091. Department One. July 27, 1936.]

M. Schumaker et al., *Respondents*, v. Bertha
Patterson, *Appellant*.[1]

E. A. Cornelius, for appellant.
Robertson & Smith, for respondents.

Tolman, J.—This is a replevin action, tried to the
court. Findings and conclusions favorable to the
plaintiffs were made, and from a judgment thereon
the defendant has appealed.

The respondents produced evidence from which it
rather clearly appears that the respondent wife owned
and was in possession of a rooming house or hotel,
known as the St. Aubyn Hotel, in the city of Spokane,
and entered into negotiations to sell the hotel to the
appellant, who had no money and no means of making
a down payment except certain household furniture,
upon which the parties placed a valuation of $250.

This property was examined and inventoried at
least a day, perhaps two or three days, before the

[1] Reported in 59 P. (2d) 927.

transaction was consummated, and, when inventoried, the property was at once delivered to the respondents at the hotel. It seems clear that possession passed to respondents at least one day before any written instruments were executed. A day or two after such delivery, the parties met in the office of an attorney, who, at their direction, prepared a bill of sale from the appellant to the respondent wife, reciting a consideration of one dollar and other valuable considerations, which by its terms vested absolute title to the household furniture in respondents. This instrument was signed, acknowledged, and then delivered by the appellant to the respondents.

At the same time and place, there was prepared by the attorney and executed by both parties a written contract of conditional sale, by the terms of which the respondent wife agreed to sell and appellant agreed to buy all of the personal property then contained in the St. Aubyn hotel, including the household furniture above referred to, for the sum of $750, of which the payment of $250 was acknowledged, and the balance of five hundred dollars was made payable in monthly installments. Thereupon, the appellant entered into possession of the hotel and its contents, including the household furniture which she had theretofore delivered to the respondents.

The appellant paid substantially nothing on the rent of the hotel or on the electric light charges, for all of which the respondent wife was personally liable, and paid nothing whatever on account of the deferred payments of the purchase price. In a few months, the appellant abandoned the property and removed therefrom, taking with her the household furniture which had originally been hers. After demand, this action was instituted to recover that particular and identical property.

The appellant disputes these facts only so far as to testify:

"A. . . . I put my furniture in there. We was to sell it. She knew I didn't have a dime for rent, lights or anything. That is the reason I went in there and I thought I could make it but I couldn't. It was not to be made. Q. Did you buy the St. Aubyn hotel, the furniture in that from her? A. Yes, the furniture; for five hundred dollars. Q. And this furniture of yours, was she to have that, or were you to have it? A. Well, I figured we could make it there. I didn't know; we had it up for sale right after I put the furniture in there, and I sent her several buyers, but we couldn't get a thing. There was something radically wrong, and of course, there was no deal made, and she let me lay in that hotel five months. Q. When you turned the property over to her, when was that, just before you moved in? When did you deliver your property down there? A. Well, it was about two or three days before we went up and made out the papers. Q. And it was your intention to go there and run the place? A. Yes. Q. And you were going to use your own furniture while you were there? A. Yes. Q. And if you paid out, either by yourself or through a sale, five hundred dollars, all of that furniture was to be yours? A. Yes, sir."

The trial court found specifically that the respondent wife sold to the appellant by a conditional sales contract the particular household furniture here involved, and that, at the time she abandoned the hotel, the appellant wrongfully and without right or authority took and carried away that same household furniture.

Upon the testimony of the appellant is based the contention that her furniture was used in the transaction for the purpose of securing the purchase price of five hundred dollars which she was to pay for the hotel, and that such a result could only be accom-

plished by means of a properly executed chattel mortgage.

Two highly important facts must be borne in mind at all times as we proceed: (1) That this is a contest between the original parties to the contract and that the rights of third parties, such as creditors, are in no wise involved; and (2) that there is neither charge nor proof of either fraud or overreaching.

■ Because the rights of creditors are not involved and because there was here a clear change of possession, the cases of *Lyon v. Nourse*, 104 Wash. 309, 176 Pac. 359, *Olsen v. Legal Adjustment Bureau*, 142 Wash. 446, 253 Pac. 643, *Kelly v. Price*, 148 Wash. 542, 269 Pac. 842, and others of like import are not in point. There was nothing in the conditional sales contract here involved permitting the vendor to retake the property and to hold the vendee liable for the unpaid balance of the purchase price or any deficiency. Therefore, the case of *Raymond Bros. Impact Pulv. Co. v. Thomas*, 159 Wash. 550, 294 Pac. 219, is not in point.

The law applicable to the case is well stated in *Lloyd v. MacCallum-Donahoe Co.*, 127 Wash. 180, 219 Pac. 849, from which we quote:

"The parties themselves, that is to say, the motors company, the respondent, and the individual purchasers of the cars, treated the transaction as a sale from the motors company to the respondent, and a resale by the respondent to the purchasers. It is, therefore, difficult to understand why the transaction should not be regarded in law as the only parties interested regarded it in fact. It is a general rule that an owner of property may make such contracts with reference to it as he chooses, and that his contracts will be upheld by the courts so long as they violate no provision of express statute or do not run contrary to some rule of public policy. It is at once manifest

no statute or rule of public policy was violated by these transactions."

Here, the parties saw fit to evidence their contract by written instruments which, presumably, express their intentions. It is doubtful, indeed, if appellant's testimony, practically all of which we have quoted, indicates anything different from the intent evidenced by the writings. Certainly, that testimony is insufficient to override the written instruments.

No doubt, the thought of security was present in the minds of both parties when their minds met and when the written instruments were made, but security can be obtained by a down payment forfeitable on default, as well as by other means. The property having passed into the possession of respondents, as a down payment for their added security and being useful in the hotel to the operator, its inclusion in the conditional sales contract was natural, logical and not unlawful.

The judgment is right, and it is therefore affirmed.

MILLARD, C. J., MITCHELL, STEINERT, and GERAGHTY, JJ., concur.